**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: MAXIM INTEGRATED PRODUCTS, INC. MDL No. 2354 | ) ) ) ) | Master Docket: Misc. No. 12-244 MDL No. 2354 |
| This Document Relates to: 12-880                              12-945 | ) ) ) | Chief Judge Joy Flowers Conti |

**MEMORANDUM OPINION**

In this multidistrict patent infringement litigation Branch Banking and Trust Company ("BB&T") is the only Opposing Party ("OP") still engaged in active litigation with Maxim Integrated Products, Inc. ("Maxim"). (Civil Action No. 12-945).[1] Pending before the court are three motions: (1) the Motion for Attorneys' Fees filed by Bank of the West ("BOTW") (ECF No. 916)[2]; (2) the Motion for Entry of Final Judgment filed by BB&T (ECF No. 952); and (3) the Motion to Join BOTW's Motion for Attorneys' Fees filed by BB&T (ECF No. 947). Each of these motions relates to BOTW and BB&T's attempt to secure an award of attorneys' fees from Maxim. BOTW is no longer engaged in litigation with Maxim, as all claims asserted by or against BOTW were dismissed by order of this court on September 24, 2014. BB&T is still engaged in litigation with Maxim with respect to three of the four patents asserted against it by Maxim in these MDL proceedings. In their joint notice, the parties indicate that no further motions for attorneys' fees will be filed by any other OP. (ECF No. 975 at 2.)[3] On February 5,

---

[1] Although JPMorgan Chase ("Chase") (Civil Action No. 12-1641) originally joined the motions filed by BB&T, it settled its claims with Maxim, and is in the process of executing settlement papers. Chase, therefore, withdrew its participation in the motions discussed herein. (ECF Nos. 972, 975.)

[2] Unless otherwise indicated, all citations to the docket refer to the 12-mc-244 action.

[3] In that joint notice, BB&T stated its desire to have this matter remanded to the transferee court, the United States District Court for the Eastern District of North Carolina, for <u>Daubert</u> and summary judgment proceedings, and trial. (ECF No. 975 at 2-3.) BB&T was advised that such a request of this court must be made by motion.

2015, the court heard oral argument on these motions.

For the reasons set forth below, BOTW's motion for attorneys' fees will be denied because, even assuming for the purpose of deciding this motion only that BOTW is the prevailing party, BOTW failed to establish that this is an exceptional case. This court also denies BB&T's motion for entry of a partial final judgment because, under the circumstances presented, this court is unable to conclude that "there is no just reason for delay." It follows that BB&T's motion for attorneys' fees is premature and procedurally improper, and it is denied, without prejudice, on that basis.

A.   **BOTW's Motion for Attorneys' Fees**

   1. **Factual Background**

BOTW asks this court to declare this case "exceptional" under 35 U.S.C. § 285, and award it the "fees incurred in defending against Maxim's baseless Monitise-related claims." (ECF No. 928 at 5.) The "Monitise-related claims" are those patent infringement claims based upon BOTW's first mobile banking software application, or "app," which was developed by Monitise Americas ("Monitise"). (Id. at 6.) When Maxim sued BOTW in January 2012, BOTW was offering the Monitise app to its customers. (Id.) BOTW replaced the Monitise app, in February 2013, with an app developed by Fiserv, Inc. ("Fiserv") (Id.) In August 2014, Fiserv entered into a license agreement with Maxim, which licensed all the patents-in-suit to all Fiserv customers and clients, including BOTW and some other OPs in this MDL. (Id.; ECF No. 883.) Even though the use of the Monitise app was discontinued by BOTW in February 2013, Maxim continued to pursue damages based upon BOTW's past infringement until August 15, 2014, when Maxim granted BOTW a covenant not to sue with respect to that app. (ECF No. 928 at 7-8.)

Although other Fiserv customers involved in these MDL proceedings, such as Comerica, Inc. and U.S. Bank, filed joint stipulations of dismissal with prejudice of all claims as a result of the Fiserv license, (ECF Nos. 887-88), BOTW instead filed a motion to dismiss, (ECF No. 893). Maxim did not oppose BOTW's motion, but argued that BOTW's counterclaims of patent invalidity and non-infringement must also be dismissed. (ECF No. 900.) The court agreed and at a hearing held on September 24, 2014, dismissed all claims asserted against BOTW with prejudice, and all claims asserted by BOTW without prejudice. (9/24/14 Minute Entry; ECF No. 893.) BOTW then filed a motion for attorneys' fees (ECF Nos. 916, 923, 928), which Maxim opposed (ECF Nos. 958-59.) The motion is ripe for disposition.

BOTW asks this court to award it those attorneys' fees attributable to defending against "Maxim's baseless Monitise-related claims." (ECF No. 928 at 5.) BOTW makes no request or assertion that it is entitled to recover those fees attributable to Maxim's claims that BOTW's Fiserv app infringed its patents. According to BOTW, this is an exceptional case because Maxim pursued "objectively unreasonable" and "substantively weak" infringement claims "to pressure BOTW into paying Maxim an amount less than it would cost to try the case." (Id. at 18.) BOTW argues that Maxim's "gamesmanship" is reflected in the fact that Maxim granted BOTW an unsolicited covenant not to sue related to the Monitise app only hours before BOTW's expert reports were due. (Id. at 8.) Maxim contends, among other things, that BOTW cannot be the prevailing party because Fiserv agreed to pay Maxim substantial consideration to license its technology, which technology is used by BOTW in its current app. (ECF No. 959 at 4-5, 9-10.) Maxim also argues that BOTW cannot establish that this is an exceptional case. (Id. at 5-6.)

3

For the reasons set forth herein, BOTW's motion for attorneys' fees will be denied. Even presuming for purposes of resolving this motion only that BOTW could be deemed the prevailing party, BOTW cannot establish that this is an exceptional case. Section 285 of the Patent Act provides that "[t]he court in **exceptional cases** may award reasonable attorney fees to the **prevailing party**." 35 U.S.C. § 285 (emphasis added). The court will address the two statutory requirements, i.e., "exceptional cases" and "prevailing party" in reverse order.

2. **Prevailing Party**

To be the "prevailing party," the Court of Appeals for the Federal Circuit requires that: (1) the party "received at least some relief on the merits;" and (2) the "relief must materially alter the legal relationship between the parties by modifying one party's behavior in a way that 'directly benefits' the opposing party." SSL Services, LLC v. Citrix Systems, Inc., 769 F.3d 1073, 1086 (Fed. Cir. 2014). Decisions from the Court of Appeals for the Federal Circuit control the determination of who is a prevailing party in the context of patent litigation, and that determination is subject to de novo review. Waner v. Ford Motor Co., 331 F.3d 851, 857 (Fed. Cir. 2003); Manildra Milling Corp. v. Ogilvie Mills, Inc., 76 F.3d 1178, 1181 (Fed. Cir. 1996).

BOTW contends that it is the prevailing party because this court dismissed Maxim's claims against BOTW with prejudice after Maxim unilaterally granted BOTW a covenant not to sue. (ECF No. 928 at 10 (citing Highway Equip. Co., Inc. v. FECO, Ltd., 469 F.3d 1027, 1035 (Fed. Cir. 2006); Power Mosfet Techs., L.L.C. v. Siemens AG, 378 F.3d 1396, 1416 (Fed. Cir. 2004)).)

Maxim contends that it is the prevailing party because it "prevail[ed] overall" by securing substantial consideration pursuant to a license with Fiserv, which accounted for the vast majority of infringing use by BOTW customers. (ECF No. 959 at 13-14 (citing SSL Services,

LLC v. Citrix Sys., Inc., 769 F.3d 1073, 1087 (Fed. Cir. 2014)).) Maxim also relies upon a recent decision issued by the United States District Court for the District of Delaware in which an accused infringer was found not to be a prevailing party because, although it secured dismissal of the lawsuit, the dismissal was caused by the accused infringer's indemnitor obtaining a license from the patent holder. (ECF No. 959 at 14 (citing Pragmatus Telecom LLC v. Newegg Inc., No. 12-1533, 2014 WL 3724138, at *2-3 (D. Del. Jul. 25, 2014)).)

In this case, BOTW, through its developer and indemnitor Fiserv, obtained a license from Maxim with respect to the Fiserv app. Maxim clearly prevailed in this respect. After that license agreement was executed, Maxim voluntarily released any and all claims asserted against BOTW with respect to the discontinued Monitise app, leading this court to dismiss those claims with prejudice. BOTW contends that it prevailed in this respect.

Even if the court were to assume for the sake of argument that BOTW did succeed in this case by obtaining dismissal of the Monitise claims, it would not follow that BOTW is the "prevailing party" for purposes of § 285. The dismissal of BOTW's claims did not follow any findings adverse to Maxim on the merits; it followed execution of a license agreement between BOTW's indemnitor Fiserv and Maxim. See Pragmatus, 2014 WL 3724138, at *2-3. The Delaware district court distinguished Highway Equipment and Power Mosfit, the two decisions primarily relied upon by BOTW, on precisely these grounds. The district court distinguished Highway Equipment on the basis that no reason for the dismissal was given in that decision, while in Pragmatus (and in the instant case) the court knew that the dismissal was based upon a license to the indemnitor. Pragmatus, 2014 WL 3724138, at *2. The district court distinguished Power Mosfet on the basis that the patent holder voluntarily dismissed its claims after the court determined, following a bench trial, that the patent-in-suit was not infringed and

5

had not been proven invalid or unenforceable, while in Pragmatus (and in the instant case) the court had made no "finding regarding any substantive issue in the case." Id.  The facts of the instant case are nearly identical to those set forth in Pragmatus, and for the same reasons discussed in that decision, BOTW cannot be the prevailing party.

BOTW cannot challenge the chronology of events or the procedural history of this case.  There is no factual dispute that the litigation between Maxim and BOTW ended because Maxim obtained a substantial license payment from Fiserv, which resulted in the claims against BOTW relating to the Fiserv app being resolved in Maxim's favor.  There is no dispute that Maxim's claims against BOTW relating to the Monitise app were dismissed because Maxim provided BOTW with a covenant not to sue.  BOTW obtained no monetary payment from Maxim, or any substantive ruling adverse to the validity, enforceability, or infringement of any of Maxim's patents.[4]  Under these circumstances, it is difficult to characterize BOTW as the prevailing party.

The court will presume, however, for purposes of resolving the present motion only, that BOTW is the prevailing party for purposes of the fee petition.

3. **Exceptional Case**

In Octane Fitness, LLC v. ICOM Health & Fitness, Inc., 134 S.Ct. 1749 (2014), the United States Supreme Court provided guidance to federal courts with respect to determining whether or not a case is "exceptional."  The Court held that an entitlement to fees must be proven by a preponderance of the evidence, instead of clear and convincing evidence, and that an

---

[4] Although Maxim voluntarily agreed, in September 2014, not to assert the '880 Patent against BB&T, (ECF No. 909), it did so following the United States Supreme Court's decision in Limelight Networks, Inc. v. Akamai Technologies, Inc., 134 S. Ct. 2111 (2014) (judgment issued July 7, 2014), concerning the relationship between direct and indirect infringement, and the standards for proving joint infringement by multiple parties.  This circumstance cannot be construed as a ruling in BOTW's favor on the merits of any claim.

6

"exceptional case" is one "that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." Octane Fitness, 134 S.Ct. at 1756. The determination is to be made on a case-by-case basis considering the totality of the circumstances. Id. Relevant considerations are "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." Id. at n.6.

According to BOTW, this case is exceptional because Maxim's infringement allegations based upon the Monitise app, which did no more than direct a user to BOTW's website, were "substantively weak" and "objectively unreasonable," indicating that their inclusion in this lawsuit was for the sole purpose of extracting a nuisance settlement from BOTW. (ECF No. 928 at 11-17.) BOTW contends that because it created no "integrated circuits," but only provided software that allowed its customers to create the claimed apparatus, and did not perform certain steps of the asserted method claims according to this court's claim construction of terms such as "value datum," BOTW could not have possibly infringed. (Id.) BOTW notes that any arguments with respect to the combination of BOTW's Monitise app with an Apple iOS necessarily fail because Apple held a license to Maxim's technology. (Id. at 14.) BOTW contends that the only reasonable conclusion to draw from the weakness of Maxim's infringement claims with respect to the Monitise app is that Maxim pursued this litigation to pressure BOTW into settlement, and when BOTW refused to succumb to that pressure, Maxim unilaterally released its claims rather than incur the expense of expert discovery. (Id. at 18.)

In opposition, Maxim points out that it provided BOTW with a covenant not to sue with respect to the Monitise app almost immediately after receiving a signed settlement agreement from Fiserv, whose version of the BOTW app accounted for the vast majority of the monetary damages that Maxim could have recovered against BOTW. (ECF No. 959 at 5.) Maxim notes the inherent flaw in BOTW's argument that Maxim's infringement allegations were "weak" and "baseless" given that all except one of the OPs settled their claims in these MDL proceedings. (Id.)

This court concludes that BOTW did not prove, and cannot prove, by a preponderance of the evidence, that this case "stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated," or for any other reason, based upon the totality of the circumstances. Octane Fitness, 134 S.Ct. at 1756. Neither the timing of Maxim's issuance of the covenant not to sue, nor the record concerning the merits of this case would support a finding of exceptionality.

First, with respect to the timing issue, BOTW does not, and cannot, dispute that Maxim executed the covenant not to sue one day after it received the executed license agreement from Fiserv. (ECF No. 928 at 8.) Although this date happened to coincide with BOTW's submission of expert reports, there is no evidence to indicate that Maxim's issuance of the covenant not to sue was based upon that deadline instead of receipt of the executed Fiserv license agreement. The court cannot make the inference that BOTW advances, i.e., that Maxim issued the covenant not to sue in order to avoid the expense of expert discovery, based upon this record. Maxim issued the covenant not to sue the day after it received a signed copy of a license agreement with Fiserv that resulted in Maxim securing substantial consideration for the vast

majority of infringing uses made by BOTW customers. This date happened to fall on the day before BOTW's expert reports were due. Under these circumstances, the court cannot find that Maxim litigated the case in an unreasonable manner based upon when Maxim issued the covenant not to sue BOTW.

Second, the court cannot find, based upon this record, that BOTW proved that this case is exceptional because Maxim's claims were "substantively weak." At the outset, the court must put the litigation between BOTW and Maxim in its proper context by again summarizing the facts. When Maxim sued BOTW, BOTW was using the Monitise app. About a year later, BOTW switched to the Fiserv app, and Maxim eventually added claims based upon BOTW's use of the Fiserv app to this litigation. The reasons why BOTW switched apps are not important to the present discussion. BOTW's developer Fiserv agreed to execute a license with Maxim that allowed BOTW to use the Fiserv app. Litigation with respect to the discontinued Monitise app was not encompassed within that license because it was created by a different developer. Having benefitted from Fiserv's license agreement with Maxim, BOTW cannot assert that Maxim's <u>entire</u> case against it was weak. Under these circumstances, the best argument that BOTW can make is that although Maxim asserted patent infringement claims with respect to BOTW's current Fiserv app that were strong enough to justify a license, Maxim's claims based upon BOTW's discontinued Monitise app were so weak that the entire case became exceptional. Once the issue is properly framed, the court's holding with respect to whether this is an exceptional case becomes readily apparent.

Nevertheless, the court turns to BOTW's merits-based arguments with respect to the Monitise app. The substantive arguments that BOTW and Maxim made in the briefing and at oral argument are facially plausible. It is possible that BOTW could have prevailed on at least

9

some of these points at summary judgment or trial. Maxim, however, might have prevailed on at least some of these points at summary judgment or trial. The court cannot assess at this point in the proceedings, and based upon this record, which party's arguments would have ultimately proved successful. In order to do so the court would be required to make factual and legal findings that are not supported by the sparse evidentiary record presented in support of this motion. That record consists of discovery documents and deposition transcript excerpts indicating that Maxim officials "admit" certain facts on which BOTW bases its legal arguments. (ECF No. 917.) The "evidence," however, amounts to no more than attorney argument, and citation to favorable facts obtained in discovery in support thereof. The record is insufficient for this court to make the merits findings that would be required to grant BOTW's motion. The court notes that although approximately twenty-five other OPs entered into license agreements with Maxim, BOTW submits no evidence to support a finding that Maxim engaged in extorting nuisance settlements from them as well. No evidence, at all, was presented by BOTW at the hearing on this motion.

It is again important to reiterate that the case involving BOTW was resolved at the close of fact discovery. The court had not yet heard <u>Daubert</u> motions, or scheduled dispositive pre-trial motions. There had been no trial. Although motions to dismiss were decided shortly after this MDL began and this court construed the disputed claim terms, no merits assessment of the case had occurred at the time the claims made by and against BOTW based upon the Monitise app were dismissed. <u>See</u> <u>Bayer CropScience AG v. Dow AgroSciences LLC</u>, No. 12-256, 2015 WL 108415, at *3-6 (D. Del. Jan. 5, 2015) (district court found claims to be "exceptionally weak" following ruling on summary judgment motions); (ECF No. 928 at 10 (BOTW acknowledging that "Maxim's claims were not adjudicated on the merits").) Without

engaging in a substantive analysis, for the first time, of each argument raised by BOTW, this court cannot say which of Maxim's positions were weak, and which were strong, and whether a particularly strong argument might have compensated for any weak argument, or how many strong arguments could overcome a particularly weak argument. Even if the court could engage in such a substantive analysis, the court would then be required to assess the level of damages at issue, without any evidence about damages, and gauge the relative value of Maxim's overall infringement case against BOTW. Such an exercise would amount to no more than guesswork at this juncture, and the court declines the invitation to engage in such an undertaking.

As Maxim correctly notes, this MDL patent litigation, which at one time involved more than twenty-five OPs, has, with the exception of one party, been settled by way of license agreements. These agreements cannot be ignored by this court, and are at least some objective indication that Maxim's infringement position may have had some overall merit. Although BOTW argues that these licenses were extorted from the OPs in order to avoid protracted or expensive patent litigation, there is no proof of this allegation. The court is familiar with the cases in this MDL, and there is no indication that Maxim litigated these cases as a ruse for extracting quick nuisance settlements from its opponents. This MDL has been proceeding for nearly three years. Some of the member cases transferred to this court were filed more than three years ago. The docket of the MDL case is nearing 1,000 entries and indicates that 306 motions were filed with this court. Although some of those motions addressed procedural matters, the sheer volume of activity in this case belies an inference that this was a sham litigation pursued for the sole purpose of asserting baseless infringement claims in order to secure unwarranted license agreements. This court is familiar with this matter and has found counsel for Maxim and the OPs to be prepared for proceedings, and well-versed in the technology and law. The written

11

submissions have been coherent, complete, and appropriate. The record does not bespeak of sham litigation.

BOTW failed to satisfy its burden to prove that this is an exceptional case, even after the Supreme Court lowered the bar in Octane Fitness. Even assuming that BOTW was the prevailing party, which this court is not convinced BOTW can be, it would not be entitled to attorneys' fees.

**B. BB&T's Motions for Entry of Partial Final Judgment and for Attorneys' Fees**

BB&T asks this court to make its order granting the parties' stipulated dismissal of all claims and counterclaims related to the '880 Patent a partial final judgment. (ECF Nos. 937, 948, 952.) BB&T's stated goal in seeking this relief is to satisfy the requirements of Federal Rule of Civil Procedure 54(d)(2)(B)(i), so that it can immediately seek an award of attorneys' fees. Although partial final judgments are typically sought in order to ripen part of a case for purposes of appeal, BB&T stated goal in this case is only to ripen its claim for attorneys' fees under Federal Rule of Civil Procedure 54(d). (ECF Nos. 909, 929, 937.)

According to BB&T, a partial final judgment is appropriate because: (1) the claims related to the remaining patents-in-suit are unrelated to the '880 Patent; and (2) entry of a partial judgment will allow the court to efficiently adjudicate BB&T's motion for attorneys' fees together with BOTW's motion for attorneys' fees. (ECF No. 948 at 3-4.) Neither proffered justification warrants entry of a partial final judgment under the circumstances of this case.

1. **Factual Background**

Maxim originally accused twenty-seven OPs of infringing five of its patents: the '095 Patent, the '510 Patent, the '880 Patent, the '013 Patent, and the '702 Patent. These patents are all related. The '880 Patent issued from a divisional application of the '510 Patent.[5] (ECF No. 691 at 2.) The '702 Patent, '013 Patent, and '095 Patent date back to a common provisional application and share a substantially similar specification. (Id.) The '013 Patent and '095 Patent incorporate by reference the '510 Patent. The '510 Patent and '880 Patent incorporate by reference the '702 Patent. (Id.) The '702 Patent is no longer at issue because Maxim and the two OPs against which it had been asserted (Starbucks and Groupon) settled the claims.

In light of the Supreme Court's decision in <u>Limelight Networks, Inc. v. Akamai Technologies, Inc.</u>, 134 S. Ct. 2111 (2014), Maxim agreed to no longer assert that BB&T directly or indirectly infringed any claims of the '880 Patent. Maxim is still asserting three patents against BB&T (the '510, '013 and '095 Patents). The '880 Patent, on which BB&T seeks entry of a partial final judgment, issued from a divisional application of the '510 Patent, which is one of the patents still being asserted by Maxim against BB&T.

---

[5] A later application for an independent or distinct invention, carved out of a pending application and disclosing and claiming only subject matter disclosed in the earlier or parent application, is known as a divisional application or "division." Manual of Patent Examining Procedure § 201.06. While a divisional application may depart from the phraseology used in the parent application there may be no departure therefrom in substance or variation in the disclosure that would amount to "new matter" (thus requiring that a continuation-in-part be filed) if introduced by amendment into the parent application. Id.

## 2. **The Law**

Rule 54, entitled Judgment; Costs, reads, in pertinent part:

(a) Definition; Form. "Judgment" as used in these rules includes a decree and any order from which an appeal lies. A judgment should not include recitals of pleadings, a master's report, or a record of prior proceedings.

(b) Judgment on Multiple Claims or Involving Multiple Parties. When an action presents more than one claim for relief--whether as a claim, counterclaim, crossclaim, or third-party claim--or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.
….
(d) Costs; Attorney's Fees.
…
    (2) Attorney's Fees.
    (A) Claim to Be by Motion. A claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages.
    (B) Timing and Contents of the Motion. Unless a statute or a court order provides otherwise, the motion must:
        (i) be filed no later than 14 days after the entry of judgment;
        (ii) specify the judgment and the statute, rule, or other grounds entitling the movant to the award;
        (iii) state the amount sought or provide a fair estimate of it; and
        (iv) disclose, if the court so orders, the terms of any agreement about fees for the services for which the claim is made.
…

FED. R. CIV. P. 54. 35 U.S.C. § 285 provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."

Under Rule 54(b), an order that adjudicates fewer than all the claims at issue in a case does not end the action, and is not a final judgment, unless the court expressly determines that there is "no just reason for delay" and enters a partial final judgment. FED. R. CIV. P. 54(b). Making this determination is a matter that falls within the discretion of the district court. iLOR,

LLC v. Google, Inc., 550 F.3d 1067, 1072 (Fed. Cir. 2008); Intergraph Corp. v. Intel Corp., 253 F.3d 695, 699 (Fed. Cir. 2001); see Elliott v. Archdiocese of New York, 682 F.3d 213, 227 (3d Cir. 2012); Zahl v. New Jersey Dept. of Law and Public Safety Div. of Consumer Affairs, 428 F.App'x 205, 208 (3d Cir. 2011). The district court's role in deciding whether to certify a judgment as final pursuant to Rule 54(b) is to "act as dispatcher" to the courts of appeals. Sears, Roebuck & Co. v. Mackey, 351 U.S. 427, 436 (1956). The Court of Appeals for the Federal Circuit recognizes that district courts have "substantial discretion" in deciding whether there is any just reason to delay, and looks to regional circuit law in assessing whether that discretion has been abused. Intergraph, 253 F.3d at 699; e.Digital Corp. v. Futurewei Technologies, Inc., 772 F.3d 723, 727 (Fed. Cir. 2014).[6]

The Court of Appeals for the Third Circuit has set forth several factors that district courts should consider when assessing whether there is "just reason for delay" under Rule 54(b): (1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final; and (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like. Berckeley Inv. Group, Ltd. v. Colkitt, 455 F.3d 195, 203 (3d Cir.

---

[6] Although neither party addresses the issue, both presume that regional circuit law applies to the Rule 54(b) determination. (ECF Nos. 948 and 967.) As interpretation and application of a Federal Rule of Civil Procedure is not a matter unique to patent law, the court concurs and applies the law of this regional circuit. Invitrogen Corp. v. Biocrest Mfg., L.P., 424 F.3d 1374, 1378-79 (Fed. Cir. 2005); Biodex Corp. v. Loredan Biomedical, Inc., 946 F.2d 850, 857-58 & n.10 (Fed. Cir. 1991). In any event, the court is unaware of any authority from the Court of Appeals for the Federal Circuit that would cause this court to reach a different ruling even if that authority's law applied.

2006) (citing Allis–Chalmers Corp. v. Philadelphia Elec. Co., 521 F.2d 360, 364 (3d Cir. 1975), overruled on other grounds by Curtiss–Wright Corp. v. Gen. Elec. Co., 446 U.S. 1, 6-7 (1980)).).

A motion for attorneys' fees cannot be filed until after entry of judgment, including a partial final judgment, unless a statute or court order provides otherwise. FED. R. CIV. P. 54(d)(2)(B)(i). The Court of Appeals for the Federal Circuit has held that no provision in section 285 exempts requests for attorney fees thereunder from compliance with Rule 54(d)(2)(B). IPXL Holdings, LLC v. Amazon.com, Inc., 430 F.3d 1377, 1386 (Fed. Cir. 2005); Technology Innovations, LLC v. Amazon.com, Inc.. No. 11-690, 2013 WL 4409462, at *3 (D. Del. Aug. 15, 2013). If this court was to deny BB&T's motion for entry of partial final judgment, it would follow that BB&T's motion for attorneys' fees would be procedurally improper and premature under Rule 54(d).

3. **Analysis**

In this case, even though BB&T is still litigating three of the four patents that Maxim asserted against it, it asks that the order dismissing all claims involving the '880 Patent be made a partial final judgment. (ECF No. 952.) Although such relief is typically requested so that a party can take an immediate appeal of separable and isolated issues, in this case BB&T expressly requests that partial final judgment be entered so that it can join BOTW's motion for attorneys' fees. (Id.) BB&T's desire to immediately file a motion for attorneys' fees does not warrant deviation from the general rule that an order disposing of less than all claims is not a final judgment.

This court must examine the five factors set forth in Allis–Chalmers in reaching a decision on BB&T's motion. Factors 2, 3, and 4 are not relevant here because BB&T does not intend to file any appeal, and all counterclaims related to the '880 Patent have also been

dismissed. BB&T argues that Factor 1 weighs in favor of entering a partial final judgment because the claims involving the '880 Patent "in no way conflict" with the claims of the remaining patents. (ECF No. 948 at 3-4.) The first factor directs a court to assess the relationship between the adjudicated and unadjudicated claims. In this case, all four patents are related and share a common claim construction. Although the '880 Patent concerned method claims, instead of apparatus claims, the fact remains that the specification and claim terms of the '880 Patent are intertwined with the three patents that remain in suit. The '880 Patent issued from a divisional application of the '510 Patent, which is still being litigated, making entry of partial final judgment based upon a voluntary dismissal with respect to the '880 Patent particularly inappropriate under the circumstances. Factor 5 also weighs against entry of a partial final judgment. As BB&T has candidly stated, it seeks entry of a partial final judgment for the sole purpose of joining BOTW's pending motion for attorneys' fees and seeking to recover those attorneys' fees attributable to its defense against infringement claims based upon the '880 Patent. According to BB&T, it is "in the interest of judicial economy" for the court to adjudicate its motion for attorneys' fees with the already-pending motion for attorneys' fees. (ECF No. 948 at 4.) BB&T is incorrect because BOTW is in a decidedly different procedural posture than is BB&T, and, in any event, this court has denied BOTW's motion for attorneys' fees.

        All the patent claims between BOTW and Maxim were voluntarily dismissed due to settlement, licenses, and covenants not to sue. (ECF No. 928.) BOTW is no longer involved in substantive patent litigation with Maxim. BOTW's motion for attorneys' fees seeks recovery of fees related to its defense against all four asserted patents, one of which happens to be the '880 Patent. As was discussed above, BOTW's motion for attorneys' fees is based upon the

factual circumstances surrounding its replacement of one developer's app with another developer's app in 2013. Those factual circumstances are unique to BOTW and do not apply to BB&T. BB&T is still involved in substantive patent litigation with Maxim concerning three patents and only has one app that is accused of infringing Maxim's patents. Under the circumstances, BB&T's motion for attorneys' fees would require this court to: (1) assesses the substantive strength of Maxim's litigation position and the reasonableness of Maxim's litigation conduct "in this case" while the parties are still litigating about three patents; and (2) parse out which of BB&T's litigation costs and fees are attributable solely to its defense against the '880 Patent, as opposed to the three related patents that are still being actively litigated. This exercise would not result in judicial efficiencies, and even if conceptually possible, would instead require a significant undertaking from this court. Entry of partial final judgment would invite serial motions for attorneys' fees in the event that BB&T was to prevail with respect to any of the three remaining patents-in-suit and sought to recover attorneys' fees attributable to its defense against these other infringement claims. Judicial economy and the equities do not favor entering a partial final judgment now for the sole purpose of allowing BB&T to join BOTW's motion for attorneys' fees, which this court has now denied.

For these reasons, the court denies BB&T's motion for entry of a partial final judgment. (ECF No. 952.) The ongoing proceedings between these parties, and the stated purpose of seeking entry of partial final judgment provides just reason for delay. It follows that BB&T's motion for joinder in BOTW's motion for attorneys' fees, (ECF No. 947), is denied because a motion for attorneys' fees cannot be filed until after entry of judgment under Rule 54(d)(2)(B)(i). The denial is without prejudice to the extent that BB&T secures the entry of a final judgment and is eligible to seek fees.

C. **Conclusion**

For the reasons set forth above, BOTW is not entitled to attorneys' fees, and this court will not enter a partial final judgment as BB&T requests.

An appropriate order will be entered contemporaneously with this opinion.

Dated: February 27, 2015 BY THE COURT:

/s/ *Joy Flowers Conti*
Joy Flowers Conti
Chief United States District Judge